IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | |
| v. | Case No. 14–CR–40085–JPG |
| MARTELL L. BROWN-WRIGHT, Defendant. | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Martell L. Brown-Wright's Motion for Compassionate Release. (ECF No. 47). For the reasons below, the Court **DENIES** Brown-Wright's Motion.

## I. PROCEDURAL & FACTUAL HISTORY

### A. The Conviction

In 2014, a federal grand jury in this District indicted Brown-Wright for possessing and distributing crack cocaine within 1,000 feet of public housing, as well as for possessing a firearm to further a drug-trafficking crime. (Indictment 1–3, ECF No. 1). He pleaded guilty six months later, (Plea Agreement 1, 11, ECF No. 26); and the Court sentenced him to a 123-month term of imprisonment, (Judgment 2, ECF No. 35). He is currently incarcerated at Federal Correctional Institution ("FCI") Forrest City Low in Arkansas. (Def.'s Mot. for Compassionate Release at 2).

### B. The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense and Brown-Wright's background. (*See* First Revised PSR 1, ECF No. 32).

According to the PSR, state law-enforcement officers discovered in 2014 that Brown-Wright was selling crack-cocaine out of his residence, "a property owned by a public housing authority." (*Id.* at 4). Their source was a man that "used crack cocaine on a regular basis for the previous year, and he obtained all of his crack cocaine from 'Low Key' (whom he identified through a photograph as Martell Brown-Wright." (*Id.*). He advised that he bought crack-cocaine from Brown-Wright 20 to 30 times, and that Brown-Wright "always had a gun on him." (*Id.*).

Through a confidential source, the officers conducted three *controlled buys* from Brown-Wright over two days. (*Id.* at 5). Brown-Wright informed the confidential source that he "typically kept his supply at his residence, but on the third of the month, he had 'too much business to do that day') (the day that government assistance checks were issued)." (*Id.*). Each of the controlled buys occurred "at or near" Brown-Wright's home, where he lived with "three small children." (*Id.*). The officers executed a search warrant at the end of the week, during which they located "6.2 grams of crack cocaine . . . ; $870 in U.S. currency; a Tauris, .22 caliber handgun with a magazine containing six cartridges seated in the pistol and one cartridge in the chamber . . . ; and a Jennings, .22 caliber handgun loaded with fix cartridges and one loose cartridge." (*Id.*). Further investigation revealed more cash hidden in furniture, "a North American Arms, .22 caliber handgun," and "[a] red suitcase . . . contain[ing] ammunition." (*Id.*).

Before committing these crimes, Brown-Wright carried convictions for retail theft (2003), impersonation to deceive law enforcement (2006), and possession of marijuana (2006 and 2012). (*Id.* at 8–9).

### C. Brown-Wright's Motion for Compassionate Release

In 2020, Brown-Wright moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Def.'s Mot. for Compassionate Release at 1).

He contends that a serious medical condition—asthma—makes him especially vulnerable to the COVID-19 virus. (*Id.*). That said, he previously "tested positive for COVID-19" and has presumably recovered. (*See id.*).

The COVID-19 virus, of course, is now a global pandemic. At FCI Forrest City Low, 48 inmates currently have COVID-19; 636 have recovered; and none have died. *Coronavirus*, Bureau of Prisons (last visited Nov. 6, 2020).[1] In brief, Brown-Wright argues that his increased risk of experiencing serious complications if he contracted COVID-19 (again) is an *extraordinary and compelling reason* warranting his release. (Def.'s Mot. for Compassionate Release at 1).

## II.  LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants given the COVID-19 pandemic. Even so, each defendant moving for compassionate release bears the burden of showing <u>not only</u> that they face an increased risk from the virus, <u>but also</u> that their continued incarceration is unnecessary to advance the statutory purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Brown-Wright failed to meet that burden.

### A.  Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

---

[1] *Available at* https://www.bop.gov/coronavirus/.

The § 3553(a) factors include:

    (1)    The nature and circumstances of the offense and the history and characteristic of the defendant;

    (2)    The need for the sentence imposed—

        a.  To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        b.  To afford adequate deterrence to criminal conduct;

        c.  To protect the public from further crimes of the defendant; and

        d.  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    The kinds of sentences available;

    (4)    The kinds of sentence and the sentencing range established for—

        a.  The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

        b.  In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ;

    (5)    Any pertinent policy statement—

        a.  Issued by the Sentencing Commission . . . ; and

        b.  That . . . is in effect on the date the defendant is sentenced[;]

    (6)    The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7)    The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015)

(quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is inappropriate. *See Shannon*, 518 F.3d at 496.

### B. The § 3553(a) Factors Weigh Against Compassionate Release

First, the Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons ("BOP") is in the best position to know which inmates are most susceptible to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 7,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Nov. 6, 2020).[2] Although not bound by any BOP determination, the Court gives BOP some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Brown-Wright was convicted of a serious drug offense. Although his distribution was not large scale, he still facilitated the spread of deadly and highly addictive drugs to the public. True, the stress and pressures of life can drive people to make bad decisions—it happens to all of us. It is not an excuse, however, for the callous disregard of one's neighbors, who he exploited by feeding into their addictions for his own gain. Brown-Wright also likely exposed three children to his life of drugs and violence, which is unacceptable. The public has a continued interest in preventing Brown-Wright from committing more crimes, as well as in promoting respect for the law,

---

[2] *Available at* https://www.bop.gov/coronavirus/.

emphasizing the seriousness of this offense, and deterring others from doing the same. In short, even considering the COVID-19 pandemic and the risks posed by it, Brown-Wright's continued incarceration is necessary to ensure the safety of the community.

### III.     CONCLUSION

The Court **DENIES** Defendant Martell L. Brown-Wright's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Friday, November 6, 2020**

S/J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
